### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Chapter 13 |
| Belarminio Peralta, | : | |
| Debtor. | : | Bankruptcy No. 18-16661-MDC |

# MEMORANDUM

BY:  THE HONORABLE MAGDELINE D. COLEMAN, CHIEF U.S. BANKRUPTCY JUDGE

## I.        INTRODUCTION

On May 7, 2020, the Court entered an Order (the "Confirmation Order")[1] confirming the Second Amended Chapter 13 Plan (the "Second Amended Plan")[2] of the debtor, Belarminio Peralta (the "Debtor").  The Court confirmed the Plan over the objection (the "Confirmation Objection") of creditor Recon International, Inc. ("Recon"), which argued that the Second Amended Plan inappropriately permitted the Debtor to retain property located at 2971-73 Aramingo Avenue, Philadelphia, Pennsylvania (the "Property") with respect to which the Debtor's property rights were terminated pre-petition.[3]

Recon has appealed the Confirmation Order to the United States District Court for the Eastern District of Pennsylvania (the "District Court").[4]  Pursuant to Local Bankruptcy Rule

---

[1] Bankr. Docket No. 95.

[2] Bankr. Docket No. 55.

[3] Bankr. Docket No. 40.  The Confirmation Objection was filed in response to the Debtor's original Chapter 13 Plan (the "Original Plan").  Bankr. Docket No. 13.  Although the Debtor subsequently amended the Original Plan twice, Recon continued to assert the Confirmation Objection with respect to the Second Amended Plan.

[4] Bankr. Docket No. 99.

8003-1, the Court issues this Memorandum in support of the Confirmation Order for the record

on appeal.

## II.     FACTUAL AND PROCEDURAL BACKGROUND[5]

### A.     The Installment Sales Contract and the Default Judgment

On or about November 17, 2011, the Debtor entered into an Installment Sales Contract

(the "Contract") with Recon for the Property that provided, among other things, the purchase of

the Property by the Debtor for the total payment of $140,000.00 with payment in full due by

May 2019.[6]  In 2015, Recon initiated a lawsuit (the "CCP Action") against the Debtor in the

Court of Common Pleas for Philadelphia County (the "Court of Common Pleas"), alleging

various defaults under the Contract.  In 2016, Recon and the Debtor entered into a Stipulation of

Settlement in the CCP Action (the "Stipulation").

The Stipulation provided, among other things, for the consequences if the Debtor

defaulted under its terms, including the entry of default judgment against him, the termination of

any rights he had under the Contract, his agreement to voluntarily vacate the Property, and the

entry of a judgment for possession and the issuance of a Writ of Possession for the Property in

favor of Recon.  Specifically, paragraph 5 of the Stipulation provided as follows:

> In the event defendant shall default under the terms of this agreement, and
> fail to cure the default as provided above, plaintiff shall be authorized to

---

[5] On April 20, 2020, the Court entered an Order (the "Stay Relief Order") denying a motion by Recon for relief from the automatic stay (the "Stay Relief Motion") to continue proceedings in Pennsylvania state court with respect to the Property (generally, the "Stay Relief Proceedings").  Bankr. Docket No. 86.  Much of the factual background set forth in the Stay Relief Order is relevant to and was considered by the Court in entering the Confirmation Order as well.  The Court therefore repeats relevant portions of the factual background in the Stay Relief Order here but will omit citations to the record in the Stay Relief Proceedings, which are set forth in the Stay Relief Order.  On May 4, 2020, Recon appealed the Stay Relief Order to the District Court (the "Stay Relief Appeal").  District Court C.A. 20-3128, Docket No. 1.  On June 3, 2020, the District Court dismissed the Stay Relief Appeal for Recon's failure to file the appellant's designation and remanded the Stay Relief Order to this Court.  Dist. Court. Docket No. 3.  As such, the factual findings in the Stay Relief Order are final.

[6] As such, absent acceleration, the Contract did not mature before the Debtor filed his bankruptcy petition on October 4, 2018.

2

enter judgment by filing a default judgment with the Prothonotary of the Court of Common Pleas, Philadelphia County, against the defendant in the amount of any unpaid amounts then due under the terms of the Installment Sales Contract.  In addition, defendant hereby stipulates that the Installment Sales Contract dated November 17, 2011, will be declared terminated, extinguishing any and all rights, liens and/or interest defendant asserted or could have asserted against 2971-73 Aramingo Avenue, Philadelphia, PA.  Defendant further consents to voluntarily vacate the premises relinquishing possession to plaintiff and the entry of a judgment for possession and the immediate issuance of a Writ of Possession directing the Sheriff of the City of Philadelphia to deliver possession of 2971-73 Aramingo Avenue, Philadelphia, PA to plaintiff, Recon International, Inc.

On July 26, 2018, Recon filed a Praecipe to Enter Default Judgment with the Prothonotary for the Court of Common Pleas, stating that the Debtor had defaulted under the terms of the Stipulation by failing to pay the real estate taxes with respect to the Property.  On July 27, 2018, a default judgment (the "Default Judgment") was entered against the Debtor in the CCP Action in the amount of $41,151.70.  On July 30, 2018, Recon filed a Praecipe for Writ of Possession in the CCP Action, which was then issued on the same day (the "Writ of Possession").

On August 3, 2018, the Debtor filed a petition to open the Default Judgment in the CCP Action (the "Petition to Open"), which the Court of Common Pleas denied.  The Debtor then filed a motion for reconsideration on September 28, 2018, which the Court of Common Pleas also denied.  On October 4, 2018, the Debtor appealed the Court of Common Pleas' denial of the Petition to Open.  The Debtor filed his Chapter 13 bankruptcy petition on the same day (the "Petition Date").  On the Petition Date, Recon had not executed on the Writ of Possession and the Debtor remained in actual possession of the Property.

**B.      Treatment of Recon's Claim Under the Second Amended Plan and Recon's Objection**

On June 12, 2019, the Debtor filed the Second Amended Plan.  The Second Amended Plan does not list Recon's claim in §4(b) as a secured claim to be cured and reinstated.  Rather, the Second Amended Plan lists Recon's claim in §4(c) as a secured claim in the amount of $35,393.96, to be paid in full under the terms of the Second Amended Plan.  Second Amended Plan, at §§4(c), 9.

As noted above, Recon's filed Confirmation Objection responded to the Debtor's Original Plan, which provided that "Debtor will cure any deficiencies and satisfy the November 17, 2011 Agreement of Sale with [Recon] during the life of this Plan.  After such satisfaction, [Recon] will deliver the Deed to 2971-73 Aramingo Avenue to Debtor, and it will file a Praecipe to Settle, Discontinue and End with Philadelphia Court of Common Pleas, assigned Case No. 15-02-00020."  Original Plan, at §9.  Recon argued in its Confirmation Objection that this treatment was inconsistent with the Stipulation and that the deed to the Property "was never to be delivered to [the Debtor] upon payment of the judgment.  Rather, because [the Debtor] breached the parties' settlement agreement and because judgment was entered based on said default, [the Debtor] relinquished any and all interest he had or could have had in [the Property]."  Confirmation Objection, at ¶3.

The above-quoted provision from the Original Plan was omitted in the Second Amended Plan, but Recon continued to object, through the Stay Relief Proceedings, to the Second Amended Plan's treatment of Recon's secured claim to the extent the Debtor sought to retain the Property and have Recon's lien released upon payment of Recon's claim.[7]  In its Stay Relief

---

[7] In denying the Stay Relief Motion, the Court noted in the Stay Relief Order that Recon's objections to the Second Amended Plan were properly an issue for consideration at the plan confirmation stage.  Stay Relief Order, at fn. 8.

Motion, Recon argued that the Debtor could not satisfy Recon's secured claim and thereby effect

a release of Recon's lien because Recon did not have a lien on the Property, but rather was the

fee simple owner of the Property.[8]  Recon further argued that the Second Amended Plan "is a

thinly veiled attempt by Debtor to have this Court act as an appellate court, thereby nullifying a

valid state court judgment obtained against the Debtor entered before this bankruptcy petition

was filed."[9]  Recon also argued in its Stay Relief Motion that the Second Amended Plan was not

confirmable because if it were to forgive the Debtor's debt, there would be no need for a plan.[10]

In opposing the Stay Relief Motion, the Debtor argued that the Contract represented a

secured transaction, for which defaults may be cured and the claim satisfied over the life of the

Second Amended Plan pursuant to §§1322(b)(6) and 1322(c)(1).[11]  Citing *In re Rowe*, 110 B.R.

712 (Bankr. E.D. Pa. 1990), the Debtor argued that it is "well established that defaults on long-

term debts, such as installment land contracts, may be cured under Section 1322 of the

Bankruptcy Code even if there has already been an acceleration or judgment which caused the

entire balance to become due."[12]  That, according to the Debtor, is because §1322(c)(1) permits a

default with respect to a lien on a debtor's principal residence to be cured until such residence is

sold at a foreclosure sale.[13]  The Debtor also points to *In re Grove*, 208 B.R. 845 (Bankr. W.D.

Pa. 1997), arguing that the court there found that installment land sale contracts are to be treated

as mortgages for the purpose of foreclosure and execution, such that the debtor could cure an

---

[8] Bankr. Docket No. 66, at ¶21.

[9] *Id.* at ¶22.

[10] *Id.* at ¶23.

[11] Bankr. Docket No. 72, at ¶¶15-16, 20-21; Bankr. Docket No. 78, at pgs. 2-4.

[12] Bankr. Docket No. 78, at pg. 2-3.

[13] *Id.* at pg. 3.

installment contract that had matured prepetition notwithstanding the entry of a judgment for possession in favor of the vendor.[14]

Recon argues that the Debtor's reliance on §1322(c)(1) is misplaced because the Contract is a land installment sales contract, rather than a mortgage.  In the case of a mortgage, Recon argues, §1322(c)(1) permits a debtor to cure the default if the bankruptcy petition was filed prior to a foreclosure sale, after which the debtor's rights are extinguished.[15]  In the case of a land installment sale contract like the one here, however, no foreclosure sale would or ever could take place because Recon, as vendor, has been in title to the Property at all relevant times.[16] Therefore, according to Recon, the right to cure under §1322(c)(1) is inapplicable.  Recon further argues that the terms of the Stipulation, whereby the Debtor agreed that Recon could enter judgment against him in the event of breach, superseded the Contract.[17]  Pursuant to those terms, Recon argues, the Court of Common Pleas entered judgment against the Debtor upon his breach, at which point his rights in the Property were terminated and his ability to cure pursuant to §1322(c)(1) terminated.[18]

## III.    DISCUSSION

The Court's decision to confirm the Debtor's Second Amended Plan over Recon's Confirmation Objection hinged on a determination as to whether the Debtor is entitled to pay Recon the Default Judgment amount over the life of the Second Amended Plan, while retaining possession of the Property, and upon full payment retain the Property free and clear of Recon's

---

[14] *Id.* at pg. 4.

[15] Bankr. Docket No. 79, at pgs. 4-5.

[16] *Id.* at pg. 5.

[17] *Id.*

[18] *Id.* at pgs. 5-6.

interest.  The Court first needed to determine what, if any, interest the Debtor held in the

Property as of the Petition Date.  Assuming the Debtor held an interest in the Property, the next

question was whether the Debtor's proposed payment of the Default Judgment under the Second

Amended Plan while retaining the Property was authorized under the Bankruptcy Code.

### A.        The Debtor Held a Possessory Interest in the Property on the Petition Date

Although the Debtor was not seeking to cure and reinstate the Contract under the Second

Amended Plan pursuant to §1322(c)(1) of the Bankruptcy Code, in addressing whether the

Debtor had an interest in the Property at all, the Parties cited, and the Court considered,

Pennsylvania and bankruptcy authority addressing the right of a land installment sale contract

vendee to cure a default prior to losing their interest in a property.

In *Anderson Contracting Co. v. Daugherty*, 417 A.2d 1227 (Pa. Super. 1979), *appeal*

*dismissed* 425 A.2d 329 (Pa. 1980), the Pennsylvania Superior Court addressed whether the

vendee in a land installment sale contract should be permitted to cure a default in the same

manner granted to a residential mortgagor under Pennsylvania's Act 6, which provides that a

default can be cured at any time at least one hour prior to commencement of bidding at a sheriff

sale or other judicial sale on a residential mortgage obligation.  The court first concluded that the

installment land sales contract at issue qualified as a "residential mortgage" under Act 6.  Given

that, the court reasoned that the cure provisions of Act 6 should not be denied to a class of

Pennsylvania home purchasers solely because their obligation to pay the balance of the purchase

price is evidenced and secured by a land installment contract as opposed to some other

transaction also designed to create a security interest in real estate.  Therefore, the court

concluded, land installment sales contracts are to be treated the same as residential mortgages for

purposes of a borrower's ability to cure defaults pursuant to the rights granted under Act 6.

In the context of §1322(c)(1), the court in *In re Grove*, 208 B.R. 845 (Bankr. W.D. Pa.

1997), looked to *Anderson Contracting* in holding that a debtor retains the right to cure a default

under a land installment sale contract beyond the time of judgment in an ejectment action.  In

*Grove*, as is the case here, the creditor obtained a judgment for possession in the ejectment

action, but the debtor remained in possession.  The creditor filed a stay relief motion on the

grounds that the debtor's interest in the property terminated upon the entry of judgment and the

debtor did not have the right to cure under a chapter 13 plan.  With respect to whether the

debtor's interest terminated pre-petition upon the entry of judgment, the court found it did not

because the property was not sold at foreclosure.  Guided by the Third Circuit's decision in *In re*

*Atlantic Business and Community Corp.*, 901 F.2d 325 (3d Cir. 1990), holding that the

possessory interest of a tenant at sufferance was sufficient to invoke the automatic stay, the

*Grove* court held that the debtor's possessory interest was sufficient to invoke the automatic stay.

The court then found that in light of this possessory interest, and given *Anderson Contracting's*

finding that a land installment sale vendee has the cure rights of a residential mortgagor under

Act 6, the debtor had the right to cure the default under the Chapter 13 plan.

Other bankruptcy courts in this district have decided differently than *Grove*.  In *In re*

*Rowe*, 110 B.R. 712 (Bankr. E.D. Pa. 1990),[19] the court found that a land installment sale vendor

did not comply with Act 6, in part, because a notice sent to the debtors stated an incorrect cure

period of 32 days from the date of the letter: "By force of §404(a) of [Act 6], they had until the

installment land sale contract analogue of one hour before a sheriff's sale to effect a cure. Since

the vendor in [a land installment sale] transaction remains in title, and no sheriff's sale is

---

[19] *Rowe* was decided before the enactment of §1322(c)(1), but its conclusion regarding when a land installment sale
vendee's rights in the property are terminated remains viable.

necessary, the right to cure an installment land sale contract presumably extends until one hour before the vendee's interests are cut off. This would not occur, in our view, until there is a court judgment terminating the vendee's rights in the property subject to the [land installment sale] contract." *Rowe*, 110 B.R. at 722. The *Rowe* court therefore pinned the termination of the vendee's rights to the occurrence of judgment, not to the termination of possession as the *Grove* court did.

In *In re Belmonte*, 240 B.R. 843 (Bankr. E.D. Pa. 1999), *rev'd in part on other grounds,* 279 B.R. 812 (E.D. Pa. 2001), the court addressed whether a pre-petition state court determination that the debtor no longer had a legal or equitable interest in a property that was the subject of a land installment sale contract precluded the debtor from invoking rights under chapter 13 to cure his default and reinstate the agreement. The *Belmonte* court acknowledged the divergent conclusions of the *Grove* and *Rowe* courts regarding whether defaults under a land installment sale contract can be cured through a Chapter 13 plan. The court disagreed with the *Grove* court's approach, which it viewed as anchored in the fact that the debtors had not vacated the premises and thus retained a possessory interest in the property. The *Belmonte* court disagreed that a bare possessory interest in property bestows sufficient rights upon a debtor to reinstate a land installment sale contract. The court reasoned that §1322(c)(1) terminates a debtor's cure rights at the time of sheriff's sale because that is the point when the debtor's interest in the property ends, regardless of whether the debtor remains on the premises after sale and therefore retains bare possession. The Court also took issue with *Grove's* conclusion that the debtor's possessory interest in the property had not been terminated because there had been no sheriff's sale of the property, reasoning that no such sale is necessary in the context of a land installment sale, and it is judgment that terminates the debtor's interests in the property. The

9

*Belmonte* court therefore aligned with the *Rowe* court and concluded that a land installment sale

vendee's right to cure any breach expires following the entry of judgment.  *See also In re*

*Callahan*, 2004 WL 350753 (E.D. Pa. Jan. 30, 2004) (where there can be no foreclosure sale

with respect to a conveyance of land, the right to cure may end upon entry of judgment).

This Court, while understanding the reasoning of the *Rowe* and *Belmonte* decisions,

agrees with the *Grove* court's reasoning that a debtor retains an interest in a property subject to a

land installment sale contract if the debtor remains in possession of the property on the petition

date, notwithstanding the entry of a judgment of possession against them.  As such, although no

sheriff's sale is necessary in the context of a land installment sale, the entry of the Default

Judgment alone did not cut off all of the Debtor's rights in the Property.  Rather, the Debtor

retained a right of possession that would have been terminated only upon Recon's execution of

the Writ of Possession, thereby dispossessing the Debtor of the Property.  *See Berwind v.*

*Williams*, 172 Pa. 1 (Pa. 1895) (although judgment debtor no longer had any legal or equitable

title to land, his entire interest was not terminated until the sheriff executed on the writ of habere

facias possessionem).  That did not occur prior to the Petition Date, and the Debtor consequently

entered bankruptcy with a possessory interest in the Property.

### B.      Under the Bankruptcy Code the Debtor was Permitted to Pay Off the Default Judgment Under the Plan and Retain the Property

Because the Debtor had a possessory interest in the Property on the Petition Date, that

interest became property of the estate.  11 U.S.C. §541.  Recon held a claim against the Debtor

based on the Default Judgment, but the Debtor was not required to satisfy the claim by

surrendering his possessory interest.  Rather, the Bankruptcy Code permits the Debtor to satisfy

that claim under the Second Amended Plan by payment of future earnings to the Chapter 13

trustee.  11 U.S.C. §1322(a)(1).  The Debtor will do precisely that by making plan payments

from future wages, which are property of the bankruptcy estate under §1306(a)(2) of the

Bankruptcy Code.  *See* Second Amended Plan, at §2(b).

        Although the Debtor *could have* surrendered his possessory interest in the Property to

satisfy Recon's claim under §1322(b)(8), that right is permissive and inapplicable where the

Debtor has chosen to satisfy the claim by some other means permitted by the Bankruptcy Code.

*See, e.g., In re Lynn-Weaver*, 462 B.R. 310, 315 (Bankr. D. Mass. 2011) (§1322(b)(8) is

expressly permissive, not mandatory, and when a plan makes no provision for payment of claims

from specific assets, the debtor has no obligation to make them available for distribution).  By

electing to pay the Default Judgment under the Second Amended Plan, the Debtor will satisfy

Recon's claim and obtain title to the Property, rather than a mere possessory interest.  Recon will

in the process be made whole as contemplated by the Bankruptcy Code because its Default

Judgment will be satisfied (Recon did not and could not argue that it is entitled to both the

Property and payment of the Default Judgment).[20]  The fact that, outside of the protections of

bankruptcy law, Recon could have executed on the Writ of Possession to obtain the Property,

rather than execute on the Default Judgment, is of no moment. In light of his possessory interest

in the Property, the Debtor proposed to satisfy Recon's claim by legitimate use of the protection

the Bankruptcy Code affords, a fundamental purpose of which is to provide debtors with a fresh

start by restructuring debtor-creditor relationships in a way that could not otherwise occur

outside of bankruptcy.  *See, e.g., District 2, United Mine Workers v. Hinks*, 67 B.R. 883 (Bankr.

W.D. Pa. 1986) (the policy behind the Bankruptcy Code is to balance creditor rights against the

---

[20] The Debtor paid approximately $100,000.00 to Recon under the Contract.  Recon was therefore owed
approximately $40,000.00, as reflected by the Default Judgment.  According to the Debtor's Schedule A/B, the
Property is worth approximately $310,000.00.  Bankr. Docket No. 11.  As such, payment of Recon's claim will
make Recon whole while allowing the Debtor to retain the substantial equity in the Property which will inur to the
benefit of his creditors, including the taxing authorities.

fresh start offered to debtors, and almost all of the Bankruptcy Code's provisions involve the

adjustment of the debtor-creditor relationship).

**IV.**     **CONCLUSION**

For the reasons discussed above, this Court confirmed the Debtor's Second Amended

Plan and overruled Recon's Confirmation Objection.

Dated: June 18, 2020

_____
MAGDELINE D. COLEMAN
CHIEF U.S. BANKRUPTCY JUDGE

Ronald G. McNeil, Esquire
McNeil Legal Services
1333 Race Street
Philadelphia, PA 19107-1585

Joseph P. Kerrigan, Esquire
461 N. 3rd Street; Suite 2B
Philadelphia, PA 19123

William C. Miller, Esquire
Chapter 13 Trustee
P.O. Box 1229
Philadelphia, PA 19105

United States Trustee
Custom House
200 Chestnut Street, Suite 502
Philadelphia, PA 19106-2912